IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 20–cv–02074–KMT

ROSE BANKS,
LAMONT BANKS,
COLORADO SPRINGS FELLOWSHIP CHURCH,

      Plaintiffs/Counterclaim-Defendants,

v.

TERRELLE JACKSON,

      Defendant/Counterclaim-Plaintiff.

---

## ORDER

---

Before the court is Plaintiffs/Counterclaim-Defendants' "Motion to Strike and Dimsiss [sic] [R. 12(b), (f)(1), FRCivP]." (["Motion"], Doc. No. 39.) Defendant/Counterclaim-Plaintiff has responded in opposition to the Motion, and Plaintiffs/Counterclaim-Defendants have replied. (["Response"], Doc. No. 40; ["Reply"], Doc. No. 44.) For the following reasons, the Motion is GRANTED, in part, and DENIED, in part.

### STATEMENT OF THE CASE

On July 16, 2020, Plaintiffs/Counterclaim-Defendants Rose Banks, her adult son, Lamont Banks, and the Pentecostal Christian church of which they are both members, Colorado Springs Fellowship Church [collectively, "Plaintiffs"], commenced this action against a former church parishioner, Defendant/Counterclaim-Plaintiff Terrelle Jackson ["Mr. Jackson," or "Defendant"], asserting claims for defamation, intentional infliction of emotional distress, and extreme and

outrageous conduct.  (Doc. No. 1.)  On September 22, 2020, Mr. Jackson, proceeding *pro se*, filed an Answer to Plaintiffs' then-operative pleading, asserting nine affirmative defenses to their claims, as well as a counterclaim for "Slander, Libel, and Harassment" against all three Plaintiffs, and a purported "cross-claim"[1] against nineteen other individuals and entities.  (Doc. No. 31; *see* Doc. No. 10.)  Mr. Jackson thereafter filed an Amended Answer, Counterclaim, and Third-Party Complaint, on February 25, 2021, asserting identical claims and defenses to those set forth in his initial pleading.  (["Amended Answer"], Doc. No. 70; *see* ["Amended Complaint"], Doc. No. 56.)  On March 31, 2021, this court dismissed Mr. Jackson's third-party claims without prejudice, pursuant to Federal Rule of Civil Procedure 4(m), for lack of service.  (Doc. No. 92; *see* Doc. No. 72.)

In the interim, Plaintiffs filed the present Motion,[2] asking to strike five of Defendant's affirmative defenses, pursuant to Federal Rule of Civil Procedure 12(f), on the grounds that they are "improper" and/or "unsupportable in the record."  (Mot. 2-10.)  In addition, Plaintiffs move

---

[1] Mr. Jackson incorrectly refers to this claim as a "cross-claim," and to the nineteen individuals and entities as "Cross-Claimants."  (Am. Answer 16-17.)  To the extent that Mr. Jackson asserts the claim against individuals and entities other than the named Plaintiffs, it is a third-party claim; to the extent that Mr. Jackson asserts the claim against Plaintiffs, it is a counterclaim. (*See* Fed. R. Civ. P. 13-14.)

[2] Plaintiffs filed their Motion on October 6, 2020, which was nearly five months *before* Mr. Jackson filed his Amended Answer.  However, because the claims and defenses set forth in Mr. Jackson's Amended Answer are identical to those set forth in his initial Answer, the present Motion remains viable, notwithstanding the fact that it is directed towards a now, non-operative pleading. (Doc. No. 71.)  For clarity's seek, the court will direct its analysis to the Amended Answer, which is Defendant's operative pleading.

to dismiss Defendant's counterclaims against them, pursuant to Federal Rule of Civil Procedure 12(b)(6), for inadequate pleading.[3]  (*Id.* at 12-15.)

## ANALYSIS

### I. *Legal Standard for* Pro Se *Defendant*

Mr. Jackson is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see*

---

[3] Plaintiffs also purportedly seek dismissal of Defendant's counterclaims, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction.  (Mot. 1, 10-11.)  However, aside from reciting the applicable legal standards, Plaintiffs provide no argument for dismissal on either of those bases.  *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").  Further, Plaintiffs appear to argue that the court lacks jurisdiction over the nineteen individuals and entities named in Defendant's Answer and Amended Answer.  (Mot. 13; *see* Am. Answer 17.)  Aside from the fact that Defendant's third-party claims have all been dismissed, Plaintiffs lack standing to assert this defense on behalf of other individuals and entities.  *See Clark v. Assocs. Com. Corp.*, 149 F.R.D. 629, 634 n.3 (D. Kan. 1993) ("The court has already determined that third-party defendants have waived their personal jurisdiction defense, and plaintiff has no standing to assert this personal defense for third-party defendants.").

*Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The litigant's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II.  The Motion to Strike

Plaintiffs first move to strike Defendant's second, fourth, fifth, sixth, and seventh affirmative defenses, under Rule 12(f).  (Mot. 2-10.)

### A.  Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) provides, in pertinent part: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f); *Burrell v. Armijo*, 603 F.3d 825, 836 (10th Cir. 2010).  "An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance."  *Chavez v. Bd. of Cnty. Comm'rs of Lake Cnty., Colo.*, 423 F. Supp. 3d 1106, 1108 (D. Colo. 2019) (quoting *FDIC v. Isham*, 782 F. Supp. 524, 530 (D. Colo. 1992)); *see also S.E.C. v. Nacchio*, 438 F. Supp. 2d 1266, 1287 (D. Colo. 2006) ("A motion to strike an affirmative defense is adjudicated under the same standard as a motion to dismiss; namely, the Court must strike the defense only if it cannot be maintained under any set of circumstances.").

The purpose of Rule 12(f) "is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case."  *Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 285 (D. Colo. 1997) (citing *United States v. Smuggler-*

*Durant Mining Corp.*, 823 F. Supp. 873, 875 (D. Colo. 1993)); *see also RTC v. Schonacher*, 844 F. Supp. 689, 691 (D. Kan. 1994) (stating that Rule 12(f)'s purpose "is to minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial").  Striking a portion of a pleading is "a severe remedy;" as such, motions to strike are "generally disfavored."  *Sender v. Mann*, 423 F. Supp. 2d 1155, 1163 (D. Colo. 2006) (citing *Isham*, 782 F. Supp. at 530).  Thus, the moving party's "burden of proof is a heavy one."  *Holzberlein v. OM Fin. Life Ins. Co.*, No. 08-cv-02053-LTB, 2008 WL 5381503, at *1 (D. Colo. Dec. 22, 2008).  An affirmative defense "should not be stricken if there is any real doubt about its validity, and the benefit of any doubt should be given to the pleader."  *Sender*, 423 F. Supp. 2d at 1163 (citation, alterations, and internal quotation marks omitted).  That being said, irrespective of whether the moving party has met his burden to prove that allegations contained in a pleading violate Rule 12(f), the court retains discretion to grant or deny the motion to strike.  *See Scherer v. U.S. Dep't of Educ.*, 78 F. App'x 687, 689 (10th Cir. 2003) (unpublished) (reviewing a district court's ruling on a motion to strike for abuse of discretion); *see also* Fed. R. Civ. P. 12(f) (denoting only that allegations that are subject to Rule 12(f) "may" be stricken).

### B.  Second Affirmative Defense – Duress

Defendant's second affirmative defense, entitled "Duress," states as follows:

The Defendant would like to enact this affirmative defense as this applies to the case as many in Plaintiff COLORADO SPRINGS FELLOWSHIP CHURCH by reason of Plaintiff ROSE BANKS.  "Duress occurs where a party is forced to enter into a contract, or otherwise give consent, as the result of an improper threat that leaves that party no reasonable alternative."  Many situations spoken of by the Defendant were brought about by this simple matter because in order for the Plaintiff ROSE BANKS to maintain her eerie and quite vile control; she would always threaten members of the church which is Plaintiff COLORADO SPRINGS FELLOWSHIP CHURCH.  She would use the statement "and if you don't do it do not step foot back in this church."

> Not allow Discharge in bankruptcy – This is asked of the court to not allow this on the plaintiffs' side nor the cross claims.

(Am. Answer 10-11.)  Plaintiffs move to strike this affirmative defense, on the grounds that duress "only may be raised in a breach of contract action."  (Mot. 4-5.)  In addition, Plaintiffs argue that Defendant's allegation concerning "bankruptcy" should be stricken, specifically, "as improper under the Rules."  (*Id.* at 5-6.)

In Colorado, duress is an affirmative defense to a breach of contract claim.  *Hammond v. Intervention*, No. 14-cv-00242-MEH, 2014 WL 4855025, at *7 (D. Colo. Sept. 30, 2014) (citing *Vail/Arrowhead, Inc. v. Dist. Court for the Fifth Judicial Dist.*, 954 P.2d 608, 612 (Colo. 1998)).  "A contract is voidable on the grounds of duress if a party's manifestation of assent is induced by an improper threat that leaves no reasonable alternative."  *Vail/Arrowhead*, 954 P.2d at 612 (citing Restatement (Second) of Contracts § 175 (1981); *DeJean v. United Airlines, Inc.*, 839 P.2d 1153, 1160 (Colo. 1992)); *accord Hammond*, 2014 WL 4855025, at *7 ("Under [a duress] defense, a defendant is not legally responsible to the plaintiff for a breach of contract if the defendant proves [he or she] was not acting of his or her free will and the plaintiff caused defendant's lack of free will").  Although duress is most typically contemplated in the context of a bilateral contract, court have, on occasion, found the defense applicable to certain types of unilateral acts.  *Vail/Arrowhead*, 954 P.2d at 612 (finding the defense to be applicable to a disclaimer of interest in property).

Here, Mr. Jackson has failed to allege *any* action that he or any other individual purportedly took, which was "induced by an improper threat."  Absent such allegations, Mr. Jackson's affirmative defense of duress clearly "cannot succeed under any circumstance."

*Chavez*, 423 F. Supp. 3d at 1108; *see Malibu Media, LLC v. Ryder*, No. 13-cv-01538-WYD-MEH, 2014 WL 1040478, at *3 (D. Colo. Mar. 18, 2014) (finding a defendant's attempted duress defense to be inadequately pleaded, where the defendant failed to include any facts in support of the defense, making it "impossible" for the court to determine the context in which the duress defense was brought); *see also Hammond*, 2014 WL 4855025, at *7 (finding allegations—that the plaintiff "was forced to sign the intake documents, which she was not allowed to review, under a threat of punishment, and the intake documents 'were later illegally used against her in a court of law against' her"—insufficient to state a duress defense). Accordingly, Defendant's second affirmative defense will be stricken.

### C. *Fourth Affirmative Defense – Statute of Limitations*

Defendant's fourth affirmative defense, "Statute of limitations," provides: "The defendant would like to enact this affirmative defense because the Plaintiffs[] are asking to file suit for something that was said in 2018." (Am. Answer 11.) In other words, Defendant alleges that either some or all of Plaintiffs' claims against him are barred by the applicable statute of limitations. Plaintiffs move to strike this affirmative defense on the grounds that "it is unsupportable in the record." (Mot. 6.) In addition, Plaintiffs argue that "it is unclear if this Affirmative Defense applies to all of the Causes of Action set forth in the Amended Complaint." (*Id.*)

In their operative pleading, Plaintiffs assert three causes of action against Defendant: (1) "Defamation and Libel *Per Se*;" (2) "Infliction of Emotional Distress;" and (3) "Extreme and Outrageous Conduct." (Am. Compl. ¶¶ 37-66.) In Colorado, defamation claims are subject to a

one-year statute of limitations.[4]  Colo. Rev. Stat. § 13-80-103(1)(a); *accord Burke v. Green*, 963 P.2d 1119, 1121 (Colo. App. 1998).  The limitations period applicable to outrageous conduct claims[5] is two years from the date of accrual.  Colo. Rev. Stat. § 13-80-102(1)(a); *accord Winkler v. Rocky Mountain Conference of United Methodist Church*, 923 P.2d 152, 161 (Colo. App. 1995).  Under Colorado law, a cause of action accrues "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence."  Colo. Rev. Stat. § 13-80-108(1); *accord Taylor v. Goldsmith*, 870 P.2d 1264, 1265-66 (Colo. App. 1994) (applying § 13-80-108(1) to claims for libel, slander, and outrageous conduct).

Here, Plaintiffs' operative pleading alleges that, starting around June 2018, and continuing, again, on three subsequent occasions—November 18, 2018, July 10, 2020, and July 14, 2020—Mr. Jackson "post[ed] on social media defamatory, false and slanderous statements about the named Plaintiffs."  (Am. Compl. ¶¶ 2, 6-9, 25-27, 30-36.)  Plaintiffs allege that they first "discovered" certain of the social media postings at issue in August 2019.  (*Id.* at ¶ 3.)  Accepting these allegations as true, and construing them in Plaintiffs' favor, the statute of limitations began running on Plaintiffs' claims, no earlier than August 2019.  Colo. Rev. Stat. § 13-80-108(1).  Given that Plaintiffs commenced this lawsuit on July 16, 2020, each of Plaintiffs'

---

[4] Because subject matter jurisdiction in this case is predicated upon diversity of citizenship, the court applies Colorado law to the parties' respective claims, including Colorado law relating to the statutes of limitations.  *See Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945) (holding that statutes of limitations are considered substantive matters for purposes of the *Erie* doctrine), *overruled on other grounds by Hanna v. Plumer*, 380 U.S. 460 (1965).

[5] Although Plaintiffs pleaded outrageous conduct and infliction of emotional distress as two separate causes of action, under Colorado, these are merely "two ways of stating the same claim." *English v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004); *see Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665-66 (Colo. 1999) (describing the tort as "intentional infliction of emotional distress by outrageous conduct).

claims was, in theory, timely-filed within the applicable limitations period.  In his responsive pleading, however, Mr. Jackson has disputed many of Plaintiffs' allegations.  (Am. Answer ¶¶ 2-3, 25, 28.)  Specifically, in his Amended Answer, Mr. Jackson admits only to posting a "live video" on his Facebook page, on July 10, 2020, and to posting that same video on YouTube, on July 14, 2020.  (*Id.* at ¶¶ 31-32.)  Mr. Jackson's Amended Answer makes no admissions concerning the remaining social media posts alleged by Plaintiffs.  (*Id.* at ¶¶ 2-3, 25, 28.)

Based on the foregoing, to the extent that Plaintiffs' claims are predicated upon the July 10, 2020 and July 14, 2020 social media posts, there can be no dispute that those claims were timely filed on July 16, 2020.  As such, Mr. Jackson's statute of limitations defense "cannot succeed under any circumstance" with respect to those claims, and thus, will be stricken. However, to the extent that Plaintiffs' claims are predicated upon any other social media posts purportedly made by Defendant, there remains a dispute as to when those claims accrued.  Thus, Mr. Jackson's statute of limitations defense remains viable as to those claims, and thus, will not be stricken. *See Harrington v. McGraw-Hill Global Educ. Holdings, LLC*, No. 1:17-cv-02960-RM-SKC, 2019 WL 1317752, at *4 (D. Colo. Mar. 22, 2019) (denying a motion to strike a defendant's affirmative defense based on the statute of limitations, where there was a genuine dispute as to when the claims accrued); *Animal Care Sys., Inc. v. Hydropac/Lab Prod., Inc.*, No. 13-cv-00143-MSK-BNB, 2015 WL 1469513, at *12 (D. Colo. Mar. 26, 2015) (declining to resolve a statute of limitations defense on a motion to dismiss, where the allegations were "not specific enough to resolve what precisely forms the basis or timing" of when the plaintiff's accrued); *see also Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1389 (10th Cir. 1985) ("The question of when the plaintiffs knew or should have known of the facts constituting their cause

of action presents a genuine issue of material fact, and summary judgment therefore was improperly granted.").

### D.  Fifth Affirmative Defense – Economic Loss

Mr. Jackson's fifth affirmative defense, "Economic loss," alleges as follows:

> The Defendant would like to enact this affirmative defense due to monetary loss as a result of interference of a business relationship by means of the Plaintiffs' and that of those named in the cross claim.  This also should not apply to the Plaintiffs' [sic] in their claim, I am publishing this to prove in court.  I myself had to endure many years of pain and suffering due to the constant harassment of the Plaintiffs,' [sic] named counter claimants and acts of the Plaintiffs.  I've had to seek counseling as well just to somehow push past the series of events.

(Am. Answer 12.)  Plaintiffs argue that Defendant's fifth affirmative defense must be stricken, because it is neither "an enumerated Affirmative Defense under Rule 8(c)(1)," nor "an 'affirmative defense' under any sort of legal reasoning."  (Mot. 7.)

Colorado's economic loss rule provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."  *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).  The rule's purpose is "to maintain the sometimes blurred boundary between tort law and contract law."  *A.C. Excavating v. Yacht Club II Homeowners Assoc., Inc.*, 114 P.3d 862, 865 (Colo. 2005) (citations omitted).  In discussing the economic loss rule, the Colorado Supreme Court has explained:

> The essential difference between a tort obligation and a contract obligation is the source of the parties' duties.  Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from risk of physical harm or damage to their personal property.

*BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004) (internal citations omitted).

Contrary to Plaintiffs' assertions, there is no *per se* bar to invoking the economic loss rule as an affirmative defense to certain types of claims.  *See, e.g., Nw. Territory Limited P'ship v. Omni Props., Inc.*, Nos. 05-cv-02407-MJW-PAC, 05-cv-02409-MJW-PAC, 2007 WL 521178, at *5 (D. Colo. Feb. 15, 2007) (observing that it remains an open question as to whether the economic loss rule can be asserted as an affirmative defense).  However, in this case, there is no contractual relationship alleged to exist between the parties, at all.[6]  As such, the economic loss doctrine is wholly irrelevant to the claims at issue.  Therefore, Defendant's fifth affirmative defense, which is based on the economic loss doctrine, will be stricken.  *See Hernandez v. Ray Domenico Farms, Inc.*, No. 16-cv-1929-WJM-CBS, 2017 WL 11546341, at *1-2 (D. Colo. April 13, 2017) (striking a defendant's affirmative defense based on the economic loss doctrine, where the plaintiff alleged no claims to which the defense would be applicable); *see also Swan Global Invs., LLC v. Young*, No. 18-cv-03124-CMA-NRN, 2020 WL 897654, at *5-6 (D. Colo. Feb. 25, 2020) (holding that a plaintiff's tort claims were not barred by the economic loss rule, because the legal duties underlying the tort claims arose "from a source other than the relevant contact").

### E.  Sixth Affirmative Defense – Impossibility of Performance

Defendant's sixth affirmative defense, entitled "Impossibility of performance," states:

> The Defendant would like to enact this affirmative defense as I am a 29-Year-old who is just starting out in Real Estate.  The Plaintiffs' [sic] have already interfered with my business relationships and caused monetary damages to my income.  I do not have the means to afford such an outlandish claim by the Plaintiffs.

---

[6] In his Response, Defendant appears to argue that there is, in fact, a contractual relationship between the parties.  (*See* Resp. 2.)  However, Mr. Jackson provides no elaboration for that assertion.

(Am. Answer 12.)  Plaintiffs move to strike this defense, on the grounds that "a condition precedent to such a defense is the existence of a contract," and "[t]here is no contract between the parties here."  (Mot. 9.)  The court agrees.

Under Colorado law, impossibility of performance is "a defense to an action for breach of contract."  *City of Littleton v. Emps. Fire Ins. Co.*, 453 P.2d 810, 812 (Colo. 1969); *accord United States v. Braun*, Civ.A. No. 84-A-1405, 1986 WL 11269, at *4 (D. Colo. Oct. 8, 1986) ("It is well established in Colorado that if performance of an obligation is prevented by one of the parties to the contract, the party thus prevented from discharging his part is to be treated as though he had performed it.").  In order to establish the defense, "it is necessary to demonstrate that changed circumstances have rendered 'the promise vitally different from what reasonably should have been within the contemplation of both parties when they entered into the contract.'"  *Colo. Performance Corp. v. Mariposa Assocs.*, 754 P.2d 401, 407 (Colo. App. 1987) (citing *City of Littleton*, 453 P.2d at 812).

In this case, because no contract is alleged to exist between the parties, an impossibility of performance defense has no bearing on Plaintiffs' claims.  For that reason, Defendant's sixth affirmative defense will also be stricken.  *See Knighten v. Allstate Ins. Co.*, No. CIV-17-683-D, 2018 WL 718533, at *3 (W.D. Okla. Feb. 5, 2018) (striking affirmative defenses for lack of relationship to the pleaded claims).

### F.  *Seventh Affirmative Defense – Negligence* per se

Mr. Jackson's seventh affirmative defense, "Negligence per se," reads as follows:

The Defendant would like to enact this affirmative defense as both named Plaintiffs' ROSE BANKS and COLORADO SPRINGS FELLOWSHIP CHURCH acted in whole to destroy lives.  The acts of ROSE BANKS and the bad counsel given over the years, not only to the Defendant but to other congregants of Plaintiff

> COLORADO SPRINGS FELLOWSHIP CHURCH has cause[d] unrepairable damage. Counseling could never repair the years removed from disconnections of family members due to named Plaintiff ROSE BANKS and many other known facts.

(Am. Answer 12-13.) Plaintiffs argue that Mr. Jackson fails to provide any basis for the assertion of this defense. (Mot. 10.) Once again, the court agrees.

"Negligence *per se* is simply negligence with the standard of care being set forth in a statute or ordinance." *Wallman v. Kelley*, 976 P.2d 330, 334 (Colo. App. 1998) (citation omitted). To properly invoke negligence *per se* as a defense to a claim, the defendant asserting it must show: (1) the violation of a statute; (2) the statute was intended to protect the public against a particular type of injury; (3) the plaintiff is a member of the group of persons the statute was intended to protect; and (4) the violation of the statute was a proximate cause of the plaintiff's injury. *Fairfield Dev., Inc. v. J.D.I. Contractor & Supply, Inc.*, 703 F. Supp. 2d 1211, 1218 (D. Colo. Mar. 8, 2010) (citing *Silva v. Wilcox*, 223 P.3d 127, 135 (Colo. App. 2009)); *see also White v. Caterpillar, Inc.*, 867 P.2d 100, 109 (Colo. App. 1993) ("To support an instruction on the affirmative defense of negligence *per se*, defendants must show that plaintiff violated a regulation regulating his conduct and that the violation caused plaintiff's injuries."). "Upon such a showing, the statute conclusively establishes the standard of care and the violation establishes the party's breach of that duty, leaving the jury only the question of the extent to which the negligence caused the plaintiff's injury." *Id.* (citing *Silva*, 223 P.3d at 135).

Here, Mr. Jackson has failed to provide *any* factual allegations supporting *any* element of a negligence *per se* defense. Accordingly, Defendant's seventh affirmative defense will also be stricken.

### III.  The Motion to Dismiss

#### A.  Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," *i.e.,* those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 679–81.  Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 681.  If the allegations state a plausible claim for relief, the claim survives the motion to dismiss.  *Id*. at 679.

That being said, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, the court typically may not look beyond the pleadings.  *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010).  "Pleadings," for purposes of a Rule 12(b)(6) motion to dismiss, however, include attachments to the complaint, documents incorporated into the complaint by reference, and information subject to judicial notice.  *Tellabs, Inc*, 551 U.S. at 322; *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).  Documents attached to a motion to dismiss are considered part of the pleadings, if they are referred to in the complaint, and are central to the plaintiff's claims.  *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

### B.  The Counterclaim

In his operative pleading, Mr. Jackson asserts a counterclaim for "Slander, Libel and Harassment" against the three named Plaintiffs, purportedly "arising from the heinous and

malicious acts and undisputed facts that came about due to the actions of the Plaintiffs." (Am. Answer 14.) Mr. Jackson alleges, specifically, that Plaintiffs, together with unnamed "counterparts," "took to radio and social media posting vulgar and quite despicable lies about [him] and his family," so as to "paint[]" him "in a false/unfair light," "quiet the truth from being discussed," and "destroy [him] and his family." (*Id.* at 14-15.) Defendant complains that these actions were "humiliating and wrongful," as well as "horrendous, petty and quite vindictive," and he laments that "[t]his is not how 'people of the faith' should act towards others." (*Id.* at 14.) As relief, Defendant requests "monetary damages for loss o[f] work and emotional distress," as well as punitive damages. (*Id.* at 15.) Defendant also requests various forms of injunctive relief, including "[a]n order that the harassment of the Defendant and [his] family stop indefinitely or criminal charges to be filed and executed;" "[t]he return of Dustin Jackson's guitar stolen by Plaintiff Colorado Springs Fellowship [C]hurch or the sum thereof;" and a "[p]ublic apology from each named person of the counter suit for their heinous and malicious behavior." (*Id.* at 16.)

Plaintiffs move to dismiss Defendant's counterclaim, pursuant to Rule 12(b)(6), arguing that it is "replete with conclusory statements with no support provided whatsoever." (Mot. 13.) Specifically, Plaintiffs contend that Mr. Jackson's pleading "provides no details as to what libelous or slanderous statements were made, when they were published, and to whom they were published." (*Id.*) Plaintiffs likewise contend that Mr. Jackson's allegations concerning "harassment" include "no explanation as to what events occurred that qualify as harassment, when they took place, and how they fit into the legal definition of harassment under Colorado

law." (*Id.* at 14.)  In addition, Plaintiffs argue that Mr. Jackson "has failed to specify which of the [Plaintiffs] committed what tort at what time." (*Id.* at 13 n.5.)

Mr. Jackson's counterclaim first references "slander" and "libel." (Am. Answer 14.)  In Colorado, slander and libel are two types of defamation claims. *Keohane v. Stewart*, 882 P.2d 1293, 1297 n.5 (Colo. 1994).  "Defamation is a communication that holds an individual up to contempt or ridicule thereby causing him to incur injury or damage." *Id.* at 1297 (citing W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 111, at 771-85 (5th ed. 1984)).  "Libel is usually a written communication while slander is generally an oral communication." *Id.* at 1297 n.5.  The required elements of a defamation claim are: "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by publication." *Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 961 (Colo. App. 2009) (citations omitted).  "A statement may be defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014) (quoting *Burns v. McGraw-Hill Broad., Co.*, 659 P.2d 1351, 1357 (Colo. 1983) (alterations omitted).  Importantly, "[a] finding that the language used was defamatory must be predicated on the context of the entire story and the common meaning of the words utilized." *Id.* (quoting *Burns*, 659 P.2d at 1357).

Mr. Jackson's counterclaim also references "harassment." (Am. Answer 14.)  As Plaintiffs correctly observe, Colorado law does not recognize a specific tort claim for

"harassment." (Mot. 14 n.6.) However, courts have construed similar claims as outrageous conduct claims.[7] *See, e.g., McCarty v. Kaiser-Hill Co.*, 15 P.3d 1122, 1126 (Colo. App. 2000) (construing allegations of "harassment and intimidation" as a claim for outrageous conduct); *Whitmore v. StatGuard Techs., Inc.*, No. 09-cv-01414-REB-MEH, 2009 WL 4693902, at \*3-4 (D. Colo. Dec. 3, 2009) (applying Colorado law and construing a counterclaim for "harassment" as one for "intentional infliction of emotional distress"); *see also Dean v. Allstate Ins. Co.*, 878 F. Supp. 1397, 1400 (D. Colo. 1993) ("It is true that Colorado courts have held that bill collectors causing harassment is sufficient basis for a claim of reckless infliction of emotional distress."). To plausibly allege a counterclaim for outrageous conduct, Mr. Jackson must show that: (1) Plaintiffs "engaged in extreme and outrageous conduct;" (2) Plaintiffs engaged in such conduct "recklessly or with the intent of causing [Mr. Jackson] severe emotional distress;" and (3) Plaintiffs conduct caused Mr. Jackson to suffer severe emotional distress. *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994). "The level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high." *McCarty*, 15 P.3d at 1126 (citing *Coors Brewing*, 978 P.2d at 666). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Coors Brewing*, 978 P.2d at 666. "Although the question of whether

---

[7] To the extent that Mr. Jackson attempts to assert a claim of criminal harassment, pursuant to Colo. Rev. Stat. § 18-9-111(1)(h), the statute affords no private right of action. *See Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (observing that criminal statutes that do not provide for a private right of action are not enforceable through a civil action); *Weeks v. Claussen*, No. 15-cv-02551-CMA-KMT, 2016 WL 10644768, at \*7 (D. Colo. Oct. 31, 2016) (dismissing an attempted claim under Colo. Rev. Stat. § 18-9-111(1)(h) on that basis).

conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question." *Culpepper*, 877 P.2d at 883.

Here, Mr. Jackson has failed to provide sufficient factual allegations to plausibly state any cognizable claim for relief.  Defendant alleges that Plaintiffs and their "counterparts" intentionally told "vulgar and quite despicable lies," via the radio and social media, concerning him and his family.  (Am. Answer 14-15.)  However, Defendant provides no context for these allegations, such as when the challenged statements were made, who *specifically* made them, or even what the statements concerned.  *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (stating that a complaint must, at minimum, "explain what each defendant did to [the plaintiff]; when the defendant did it; how the defendant's actions harmed him []; and, what specific legal right the plaintiff believes the defendant violated").  Without such additional factual allegations, Mr. Jackson's counterclaim fails.  *See Obduskey v. Fargo*, No. 15-cv-01734-RBJ, 2016 WL 4091174, at *6 (D. Colo. July 19, 2016) (dismissing an outrageous conduct claim, where the plaintiff "fail[ed] to identify conduct that satisfies this tort's high bar"); *Rader v. Elec. Payment Sys., LLC*, No. 11-cv-01482-MSK-CBS, 2012 WL 4336175, at *6-7 (D. Colo. Sept. 21, 2012) (holding a libel counterclaim to be inadequately pleaded, where the defendant did not "quote or describe the offending statement in any meaningful way"); *see also Ross v. Gallegos*, No. 13-cv-00831-REB-KLM, 2013 WL 6283910, at *5 (D. Colo. Dec. 3, 2013) ("Because Plaintiff's allegations are naked and devoid of necessary factual enhancement (such as time, place, and even person), and lack legally cognizable claims, the Court concludes that Plaintiff fails to meet the standard set forth in Rule 12(b)(6).").

### C. The "Cross-Claim"

Mr. Jackson also asserts a third-party claim, which he incorrectly refers to as a "cross-claim," against nineteen individuals and entities.  (Am. Answer 16-17.)  Specifically, Mr. Jackson alleges:

> The Defendant also seeks to issue a cross claim adding the following names to the claim for their part in the heinous, outrageous and vindictive and quite frankly gross smear campaign ran against the Defendant.  They not only violated HIPAA laws, but they also violated the rights of the Defendant.  Their conduct was grievous and malicious.  All cross claims entered will be proven at trial.  The cross claim stands to prove that the Plaintiffs' [sic] and their counterparts painted the Defendant in a false/unfair light as their malicious attacks and harassment sought to destroy the Defendant and his family.  The Plaintiffs also sought to quiet the truth from being discussed.

(*Id.* at 16.)

Plaintiffs, who apparently construe this claim as being asserted against themselves as well, move to dismiss the claim, under Rule 12(b)(6), arguing that Mr. Jackson "fails to articulate actionable conduct."  (Mot. 12-14.)  Yet again, the court agrees.

Even liberally construed, Mr. Jackson's "cross-claim" almost entirely reiterates the conclusory allegations set forth in his preceding counterclaim.  The "cross-claim" does appear to allege violations of the Health Insurance Portability and Accountability Act of 1996 ["HIPAA"], 42 U.S.C. §§ 1320d *et seq.*, a federal law which provides for civil and criminal penalties for improper disclosure of medical information.  (Am. Answer 16.)  It is well-settled, however, that HIPAA does not create a private right of action.  *See, e.g., Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010) ("Any HIPAA claim fails as HIPAA does not create a private right of action for alleged disclosures of confidential medical information."); *Univ. of Colo. Hosp. v. Denver Publ'g Co.*, 340 F. Supp. 2d 1142, 1145 (D. Colo. 2004) (observing that the statutory

structure of HIPPA "precludes implication of a private right of action").  As such, any such claim here fails, as a matter of law.  *See Schneider v. Cooper*, No. 08-cv-01856-REB-KMT, 2010 WL 537760, at *7 (D. Colo. Feb. 16, 2010) ("Since HIPAA does not make available a private right or cause of action as a means of enforcement, plaintiff states no claim based upon alleged violations of the HIPAA protections.").  Further, even assuming a claim based on HIPAA violations could be asserted by a civil litigant, Mr. Jackson fails to provide *any* basic facts to support the claim. Specifically, Mr. Jackson fails to allege *who* purportedly "violated HIPAA law," *how* HIPAA laws were violated, or *when* this purported violation occurred.

On this record, then, Mr. Jackson's "cross-claim" fails to satisfy the minimum pleading standard under Rule 8(a).  As such, the dismissal of that claim is also warranted.

Accordingly, it is

**ORDERED** that the "Motion to Strike and Dimsiss [sic] [R. 12(b), (f)(1), FRCivP]" (Doc. No. 39) is **GRANTED, in part,** and **DENIED, in part**.  Specifically, Defendant's counterclaims are **DISMISSED without prejudice**, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.  Defendant's **second, fifth, sixth, and seventh affirmative** defenses are **STRICKEN**, pursuant to Federal Rule of Civil Procedure 12(f).  Defendant's

**fourth affirmative defense**, to the extent directed towards the July 10, 2020 and July 14, 2020 social media posts, is also **STRICKEN**.  The Motion is **DENIED** in all other respects.

Dated this 13th day of September, 2021.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge