**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-02074-NYW

ROSE BANKS,
LAMONT BANKS,
COLORADO SPRINGS FELLOWSHIP CHURCH,

      Plaintiffs,

v.

TERRELLE JACKSON,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

      Before the court are three motions: (1) Plaintiffs' "Motion for Summary Judgment F.R.Civ.P. [sic] Rule 56(a);" (2) Defendant's "Motion for Summary Judgment;" and (3) Defendant's "Motion [] Asking for Dismissal of Plaintiffs [sic] Counsel." (["Plaintiffs' Motion for Summary Judgment"], Doc. No. 112; ["Defendant's Motion for Summary Judgment"], Doc. No. 114; ["Defendant's Motion for Disqualification"], Doc. No. 123.)  Plaintiffs have filed a memorandum in support of their Motion for Summary Judgment, Defendant has responded in opposition, and Plaintiffs have replied.  (["Plaintiffs' Memorandum"], Doc. No. 113; ["Defendant's Response"], Doc. No. 121; ["Plaintiffs' Reply"], Doc. No. 124.)  Plaintiffs have also filed responses in opposition to both of Defendant's Motions.  (["Plaintiffs' Response to Defendant's Motion for Summary Judgment"], Doc. No. 120; ["Plaintiffs' Response to Defendant's Motion for Disqualification"], Doc. No. 125.)  No further briefing has been filed as

to the three pending Motions, and the time to do so has lapsed.   D.C.COLO.LCivR 7.1(d)

("Nothing in this rule precludes a judicial officer from ruling on a motion at any time after it is

filed.").  After considering the pleadings, the evidence submitted, and the applicable law, all three

Motions are **DENIED**.

**STATEMENT OF THE CASE**

### I.  Material Undisputed Facts[1]

Plaintiff Rose Banks has been the Pastor, religious leader, and "guiding light" of the

Plaintiff Colorado Springs Fellowship Church [the "Church"], a Christian church located in

Colorado Springs, Colorado, since its founding in 1982.  (Doc. No. 56 at ¶ 11; Doc. No. 70 at ¶

11.)   Her adult son, Plaintiff Lamont Banks, is the Executive Director of a nearby nonprofit

organization, as well as a longstanding member of the Church.  (Doc. No. 46 at ¶¶ 12-13, 25; Doc.

No. 70 at ¶¶ 12-13, 25.)  Defendant Terrelle Jackson ["Mr. Jackson," or "Defendant"] grew up

attending the Church, until the age of sixteen or seventeen, when he apparently became

disenchanted with Rose Bank's spiritual leadership, as well as with the Church's doctrinal

teachings.  (Doc. No. 56 at ¶ 30; Doc. No. 70 at ¶ 30; *see* Doc. No. 112-7.)

In 2017, or thereabouts, Mr. Jackson left Colorado and moved to Texas.  (Doc. No. 56 at ¶

22; Doc. No. 70 at ¶ 22; Doc. No. 112-4 at 4.)  Shortly thereafter, around June 2018, Mr. Jackson

allegedly began to post "defamatory, false and slanderous statements" about the three named

Plaintiffs on his various social media accounts.  (Doc. No. 56 at ¶ 2.)  On approximately November

---

[1] The undisputed facts in this matter are difficult to ascertain, given the shortcomings of the Parties' respective briefing.  The court has, to the best of its ability, attempted to set forth those facts that are undisputed and material to the resolution of the Parties' Motions for Summary Judgment.

18, 2018,[2] Mr. Jackson posted a statement on Facebook, using his personal Facebook account,

excerpted portions of which read:[3]

> This is who the church has leading this movement and preaching in her pulpit . . .
> when will she realize that <u>her sons are CORRUPT</u> . . . <u>2 of them ran women in the
> church Lamont Banks being one of them, not to mention he is almost a sex offender</u>
> . . . and one was her assistant Pastor and then <u>David Banks had a WHOLE new
> family that they found out about and tried to cover up</u> . . . WHILE STILL
> MARRIED . . . all her sons are foul . . . this is stuff they KNEW about and covered
> up . . . here is a Video of the . . . of Lamont Banks . . . look who he follows . . . now
> with Instagram if you follow people, that is what will be on your feed . . . can you
> imagine how vile his feed is.

(Doc. No. 56 at ¶ 25 (emphasis in original); Doc. No. 112-4 at 4-5.)

On July 10, 2020, or thereabouts, Mr. Jackson posted another statement on Facebook,[4]

using his personal Facebook account, excerpted portions of which read:

> This is the <u>ringleader</u> herself, the wicked witch of the West Rose M Banks , [sic]
> She Pastors [sic] Colorado Springs Fellowship Church in Colorado, unfortunately
> it's the church I grew up in.
>
> * * *
>
> I'm going live later tonight . . . The lies from Colorado Springs Fellowship Church
> stop Now, i [sic] haven't been to this <u>cult</u> since I was 16 or 17, HOW IN THE
> WORLD am I 29 and dealing with <u>the harassment egged on by Rose Banks</u> . . .

---

[2] It is unclear from the record whether this event happened on November 18, 2018, as Plaintiffs
allege, or on November 18, 2020, as Defendant claims. (*Compare* Doc. No. 56 at ¶ 25, *with* Doc.
No. 70 at ¶ 25.)

[3] Neither side has produced a copy of the statement. Rather, the Parties refer only to Paragraph 25
of Plaintiffs' operative pleading, which appears to selectively quote from Mr. Jackson's social
media posting. (*See* Doc. No. 56 at ¶ 25.) During his deposition, Mr. Jackson acknowledged
publishing the substance of Paragraph 25 to his personal Facebook account. (Doc. No. 112-4 at
4-5.) The court recites verbatim from Paragraph 25.

[4] Neither side has produced a copy of this statement, the allegations of which the court transcribes
verbatim from Paragraph 30 of Plaintiffs' operative pleading. (*See* Doc. No. 56 at ¶ 30.) During
his deposition, Mr. Jackson acknowledged publishing the substance of Paragraph 30 to his personal
Facebook account, though he testified that he was not certain of the date on which he had done so.
(Doc. No. 112-7 at 6.)

they have been calling my phone non stop [sic] for the last hour or so.  So let's go ahead and pull this cover!!!

(Doc. No. 56 at ¶ 30 (emphasis in original); Doc. No. 112-7 at 6.)  In the social media posting, Mr. Jackson also referred to Church's parishioners as a "crazy bunch of people" who were "brainwashed."  (*Id.*)

That same day, July 10, 2020, Mr. Jackson posted a two hour and seven minute video on Facebook, using his personal Facebook account.  (Doc. No. 56 at ¶ 31; Doc. No. 112-7 at 6.)  In the video, Mr. Jackson made various statements about Rose Banks,[5] including accusations that she required parishioners to obtain her "permission" before making purchases; that she was "spreading lies;" that she told Mr. Jackson's parents to "put him out" on the street at age sixteen; and that she threatened to remove parishioners who did not "pledge" money to the Church.  (*Id.*)  Mr. Jackson also apparently referred to the Church again as a "cult," and characterized its members as "being under bondage."  (*Id.*)  Mr. Jackson posted this "same exact" video to YouTube, on July 14, 2020. (Doc. No. 56 at ¶ 32; Doc. No. 70 at ¶ 32.)

At some other point in time, Mr. Jackson admittedly made "postings" about alleged "abuse" within the Church.[6]  (Doc. No. 56 at ¶ 29; Doc. No. 112-7 at 4.)  On another occasion, Mr. Jackson admittedly posted an image on Facebook, which depicted a photograph of Rose Banks

---

[5] Paragraph 31 of Plaintiffs' operative pleading includes a purported summary of six "slanderous and libelous statements" made by Mr. Jackson in the video.  (Doc. No. 56 at ¶ 31.)  Defendant has admitted to making the statements, though he disputes Plaintiffs' characterization of them as defamatory.  (Doc. No. 70 at ¶ 31; *see* Doc. No. 112-7 at 6.)  Neither side has produced a copy of the video, or a written transcript of the statements contained within.

[6] As to Mr. Jackson's statements concerning "abuse" within the Church, neither side has produced evidence as to what, specifically, Mr. Jackson said.  Nor is it clear from the record when the statements were made, or on what social media platform, if any, the "postings" were published.

next to a photograph of "the notorious Jim Jones,"[7] a man reportedly "responsible for the murder/suicide of 918 individuals including 304 children." (Doc. No. 56 at ¶ 27; Doc. No. 112-10 at 4; Doc. No. 112-13 at 4.) Plaintiffs allege that Mr. Jackson posted the image "with malice," in an attempt "to draw a clear analogy" between the two individuals depicted. (Doc. No. 56 at ¶ 27.) Finally, Plaintiffs allege that, on a different occasion, Mr. Jackson "posted" an "email," in which he stated that Rose Banks engaged in "fraud," and "received funds" totaling "5 million dollars."[8] (Doc. No. 56 at ¶ 26.)

## II.  Procedural History

Following these events, on July 16, 2020, Plaintiffs commenced this lawsuit against Mr. Jackson. (Doc. No. 1.) In their operative pleading, Plaintiff assert three causes of action: (1) "Defamation and Libel *Per Se*;" (2) "Infliction of Emotional Distress;" and (3) "Extreme and Outrageous Conduct." (Doc. No. 56 at 7-12 ¶¶ 37-66.) The first claim is asserted by all three named Plaintiffs; the remaining two claims are asserted by Rose Banks and Lamont Banks, only. (*Id.*) At the close of discovery, the Parties filed cross-motions for summary judgment on all three claims. (Doc. No. 112; Doc. No. 114.)

---

[7] It is unclear from the record when Mr. Jackson published the photographic image on Facebook. Plaintiffs allege that Defendant published the image on two different occasions, the most recent of which was on July 13, 2020. (Doc. No. 56 at ¶ 64; *see* Doc. No. 112-5 at 1.)

[8] Defendant denies this allegation. (Doc. No. 70 at ¶ 26.) Plaintiffs, for their part, have produced no evidence concerning the substance of Mr. Jackson's "email," when it was sent, or even to whom it was sent. When asked at his deposition whether he ever posted the alleged statements on social media, Mr. Jackson responded, "I don't know." (Doc. No. 112-4 at 5.)

## STANDARDS OF REVIEW

### I.  *Legal Standard for* **Pro Se** *Defendant*

Mr. Jackson is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *accord Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  This rule applies to all proceedings involving a *pro se* litigant, including summary judgment proceedings.  *Hall v. Bellmon,* 935 F.2d 1106, 1110 n.3 (10th Cir. 1991); *see Overton v. United States*, 925 F.2d 1282 (10th Cir. 1990) (liberally construing *pro se* pleadings in review of summary judgment).  However, Mr. Jackson's *pro se* status does not vitiate his obligation to adhere to, and comply with, "the same rules of procedure that govern other litigants."  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)); *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (stating that a *pro se* litigant must "comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure").  Nor does Defendant's *pro se* status entitle him to an application of different rules.  *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).  Thus, while the court makes "some allowances" for Mr. Jackson's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence structure, or his unfamiliarity with the pleading requirements," the court will not "take on the responsibility of serving as [his] attorney in constructing arguments and searching the record."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall,* 935 F.2d at 1110) (alteration omitted).

## II. The Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex*, 477 U.S. at 325. "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead, must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether there is a genuine issue for trial depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the [nonmovant], there is no 'genuine issue for trial.'" *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In evaluating a motion for summary judgment, a court may consider admissible evidence only. *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. However, this standard does not require the court to make unreasonable inferences in favor of the nonmoving party. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008). The nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994).

"Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019); *see Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

## ANALYSIS

### I.  Evidentiary Objections

The exhibits attached to Defendant's Response to Plaintiffs' Motion for Summary Judgment include a 77-page "Background Report" on Rose Banks; a 94-page "Background Report" on Lamont Banks; a single-page enumerated list, entitled "WITCHCRAFT CHURCH Control Leadership," purportedly authored by "Apostle John Eckhardt;" and excerpted text

message communications between the litigants and several non-parties.  (Doc. Nos. 121-1, 121-2, 121-3, 121-4, 121-15, 121-6.)  Plaintiffs object to this evidence as "hearsay," "unsupported," and "totally conclusory in nature."  (Doc. No. 124 at 2, 4-6.)  The court has not relied on any of these documents in reaching its conclusions, and for that reason, the evidentiary objections are moot.[9]

## II.  *Plaintiffs' Motion for Summary Judgment*

Plaintiffs move for summary judgment on all three of their claims.  (Doc. No. 112.)  Because Plaintiffs would bear the burden of proof on those claims at trial, "a more stringent summary judgment standard applies" to their Motion for Summary Judgment as compared to Defendant's Motion for Summary Judgment.  *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).  Plaintiffs "cannot force [Defendant] to come forward with 'specific facts showing there is a genuine issue for trial' merely by pointing to parts of the record that [they] believe[] illustrate the absence of a genuine issue of material fact."  *Id.* (citing *Celotex*, 477 U.S. at 323) (alteration omitted).  Rather, Plaintiffs "must establish, as a matter of law, all essential elements" of their claims before Defendant will "be obligated to bring forward any specific facts alleged to rebut" Plaintiffs' case.  *Id.*  The evidence that Plaintiffs cite in their favor "must be so powerful that no reasonable jury would be free to disbelieve it.  Anything less should result in denial of summary judgment."  *Leone v. Owsley*, 810 F.3d 1149, 1154 (10th Cir. 2015) (citation omitted).

---

[9]  Plaintiffs also argue that Defendant's Response is replete with "unsupported conclusory statements."  (Doc. No. 124 at 4-6.)  In resolving the pending cross-motions for summary judgment, the court has considered only those factual representations that are supported by the record, in accordance with Federal Rule of Civil Procedure 56.

### A. *The Defamation Claim*

As to their first cause of action, Plaintiffs allege that Mr. Jackson published numerous "false" and "defamatory" statements about them on the internet, including: (1) that the Church is a "cult;" (2) that there was "abuse" within the Church; (3) that Rose Banks, as Pastor of the Church, engaged in "fraud," received funds totaling $5 million, and allowed her "CORRUPT" sons to participate in the Church; (4) that Rose Banks is a "witch;" and (5) that Lamont Banks is "almost a sex offender." (Doc. No. 56 at ¶¶ 2, 25-26, 29-30.) In addition, Plaintiffs allege that Mr. Jackson further defamed Rose Banks when he published a photograph of her next to a photograph of Jim Jones. (*Id.* at ¶ 27.)

Plaintiffs move for summary judgment on their defamation claim, contending that the record establishes no genuine dispute as to any material fact. (Doc. No. 112; Doc. No. 113 at 7-12.) Plaintiffs further argue that there is no evidence within the record "that establishes the truth or accuracy" of the purportedly defamatory statements at issue. (Doc. No. 113 at 7.)

"Defamation is a communication that holds an individual up to contempt or ridicule thereby causing him to incur injury or damage." *Keohane v. Stewart*, 882 P.2d 1293, 1297 (Colo. 1994) (citing W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 111, at 771-85 (5th ed. 1984)). A written defamatory statement is libel; an oral defamatory statement is slander. *Id.* at 1297 n.5 ("The tort of defamation consists of two types of communication, libel and slander. Libel is usually a written communication while slander is generally an oral communication."). In Colorado,[10] the required elements of a defamation claim are: "(1) a defamatory statement

_____

[10] The parties do not dispute that Colorado law applies here. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 138 F. Supp. 3d 1191, 1197 (D. Colo. 2015) ("Because this claim arises under diversity jurisdiction, the Court applies Colorado substantive law in determining whether

concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by publication." *Williams v. Dist. Ct., Second Judicial Dist., City & Cnty. of Denver*, 866 P.2d 908, 911 n.4 (Colo. 1993).

Here, Plaintiffs have failed to adduce sufficient evidence to establish the third element, *i.e.,* that Defendant acted "with fault amounting to at least negligence."  The parties' briefing does not address whether Plaintiffs are private figures or public figures, or whether the statements at issue involve matters of public concern.  To the extent that Plaintiffs are considered public figures, or the defamatory statements involve matters of public concern,[11] the third element of their defamation claim requires them to adduce "clear and convincing proof" that Mr. Jackson published the statements at issue with actual malice, *i.e.,* with knowledge of their falsity or in reckless disregard of their truth.  *DiLeo v. Koltnow*, 613 P.2d 318, 320-21 (Colo. 1980) (citing *N.Y. Times v. Sullivan*, 376 U.S. 254 (1963)); *Smiley's Too, Inc. v. Denver Post Corp.*, 935 P.2d 39, 41 (Colo. App. 1996).

"Actual malice can be shown if the defendant entertained serious doubts as to the truth of the statement or acted with a high degree of awareness of its probable falsity."  *Brokers' Choice*

---

Plaintiffs have stated a defamation claim."); *accord Haberman v. The Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006) ("In diversity cases, the substantive law of the forum state governs the analysis of the underlying claims.").

[11] "The question whether a matter is of public concern is one of law[.]"  *McIntyre v. Jones*, 194 P.3d 519, 525 (Colo. App. 2008) (citations omitted).  "Generally, a matter is of public concern whenever it embraces an issue about which information is needed or is appropriate or when the public may reasonably be expected to have a legitimate interest in what is being published."  *Id.* (internal quotation marks and citation omitted).

*of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136-37 (10th Cir. 2014) (citing *Lewis v. McGraw-Hill Broad. Co.*, 832 P.2d 1118, 1123 (Colo. App. 1992)); *Lockett v. Garrett*, 1 P.3d 206, 210 (Colo. App. 1999) ("A showing of reckless disregard requires sufficient evidence to demonstrate that the defendant in fact entertained serious doubts as to the truth of the published statement.").  The determination as to whether there is sufficient evidence to support a finding of actual malice is a question of law.  *Lockett*, 1 P.3d at 210.  "Actual malice may be inferred by the finder of fact if an investigation is grossly inadequate." *Kuhn v. Tribune-Republican Publ'g Co.*, 637 P.2d 315, 319 (Colo. 1981) (citing *Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967)).  Further, a defendant "who willfully chooses not to learn the truth" prior to publishing an allegedly false statement can be found to have acted with actual malice.  *McIntyre v. Jones*, 194 P.3d 519, 530 (Colo. App. 2008).

In their supporting memorandum, Plaintiffs appear to argue that Mr. Jackson's actual malice can be inferred, based on the purported fact that the statements that he made about them are all demonstrably "false."  (*See* Doc. No. 113 at 11 ("[T]o publicly name Plaintiff Banks as a 'pedophile' or 'sex offender' so misrepresents the actual state of the matter as to show malice on the part of the Defendant.").)  Plaintiffs contend that, contrary to Mr. Jackson's assertions, Rose Banks "has never engaged in any criminal or unlawful conduct" with respect to her handling of the Church's "finances," and they insist that there is "no evidence, whatsoever[,]" suggesting otherwise.  (*Id.*)  Plaintiffs likewise devote large portions of their briefing to arguing that Lamont Banks is not, in fact, a "sex offender" or a "pedophile," because his 2006 criminal convictions for felony sexual assault of a minor and for misdemeanor sexual exploitation of a child were ultimately reversed and/or vacated on appeal.  (*Id.* at 9-11 (citing Doc. No. 112-11).)  Plaintiffs repeatedly

argue that they are entitled to summary judgment, because Mr. Jackson has failed to proffer any evidence as to "the truth or accuracy" of his assertions.  (*Id.* at 7.)

However, in claiming entitlement to a judgment in their favor based on Defendant's failure to adduce evidence supporting his case, Plaintiffs appear to misunderstand the summary judgment standard.  As stated *supra*, because Plaintiffs, as the movants, carry the burden of proof on their defamation claim at trial, they must first produce sufficient, credible evidence establishing "all essential elements" of that claim before Mr. Jackson, as the nonmovant, will be obligated to go beyond the pleadings and set forth specific facts to rebut Plaintiffs' case.  *Pelt*, 539 F.3d at 1280; *see Celotex*, 477 U.S. at 331.  In other words, Plaintiffs must first prove that there is enough evidence within the record which, if uncontroverted, would demonstrate their entitlement to a directed verdict on their defamation claim before Mr. Jackson will be required to do anything. *Celotex*, 477 U.S. at 331.  Plaintiffs, here, have not met this initial burden.

In this case, to the extent that Plaintiffs argue that Mr. Jackson's statements were "false," any evidence supporting that assertion has no direct bearing on whether Mr. Jackson harbored a good faith belief that his statements were true at the time that he published them.  *See Miles v. Nat'l Enquirer, Inc.*, 38 F. Supp. 2d 1226, 1230 (D. Colo. 1999) (granting a defendant's motion for summary judgment on a defamation claim arising from a journalist's publication of statements suggesting that the plaintiff was a pedophile, where the entire record "convincingly" showed that the reporters "believed their statements to be true").  Indeed, the record is replete with evidence suggesting that Mr. Jackson has never waivered in his belief that the Church is a "cult," that Rose Banks mishandled the Church's finances, or that Lamont Banks is "almost a sex offender."  (*See, e.g.*, Doc. No. 112-9 at 4 ("I have not lied about anything."), ("That definitely is my position

because it is the truth."), ("I know it is true."); Doc. No. 112-10 at 5 ("Because the actions from Pastor Rose Banks include witchcraft.  That's why that was used.").); *cf. Kuhn*, 637 P.2d at 316, 319 (holding evidence sufficient to establish a publisher's actual malice, where the publisher admitted that he had no basis for most of his false statements, that he failed to corroborate his statements, and that he failed to pursue "obvious available sources of possible corroboration or refutation"); *Examination Bd. of Pro. Home Inspectors v. Int'l Assoc. of Certified Home Inspectors*, 519 F. Supp. 3d 893, 908, 911 (D. Colo. 2021) (holding that the summary judgment record supported a finding of actual malice arising from the defendant's statement that the plaintiff's licensing exam "was not psychometrically valid," where the plaintiff presented evidence showing both that the defendant was well-versed in the science of psychometrics, and that the factor that the defendant cited as the basis for his belief that the exam was not psychometrically valid was scientifically irrelevant to that inquiry), *appeal filed*, No. 21-1087 (10th Cir. Mar. 12, 2021).  Plaintiffs also adduce insufficient evidence for the court to conclude as a matter of law that that Mr. Jackson had some sort of ulterior motive in publishing the statements at issue.  *See Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1042-43 (10th Cir. 2013) ("The motivation behind a publication is a factor to consider in determining whether the evidence shows a publisher acted with actual malice."); *see also Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 281-82 (1974) (explaining that ill will towards the plaintiff, or other such bad motives, are insufficient, standing alone, to support a finding of actual malice).  Nor do Plaintiffs adequately demonstrate that Mr. Jackson knew of, and nevertheless disregarded, contrary facts that might

have led a reasonable person to question the veracity of his statements.[12]  *Quigley v. Rosenthal*, 43 F. Supp. 2d 1163, 1180 (D. Colo. 1999) ("Failure to investigate obvious sources of refutation or corroboration of statements, especially when there is no time-pressure on their publication, may indicate not only negligence, but the higher standard of actual malice."); *see also Spacecon*, 713 F.3d at 1046 (holding that a publisher's failure to pursue "all possible sources" of information prior to publication does not show actual malice, absent evidence as to what those additional sources "may have revealed, if anything").  Moreover, as to Mr. Jackson's statement that Lamont Banks is "almost a sex offender," the fact that Lamont Banks was admittedly arrested, tried, and initially convicted on a charge of felony sexual assault of a minor, is itself evidence negating Mr. Jackson's actual malice in his publication of that statement.  (Doc. No. 113 at 9-11); *see Miles*, 38 F. Supp. 2d at 1231 ("[I]t is quite reasonable to think that a sex offender is a person who has committed sex offenses, regardless of whether that person was ever convicted of a sex offense.").  On this record, then, Plaintiffs have not demonstrated by "clear and convincing" evidence that Mr. Jackson acted with actual malice in publishing the statements at issue.  *See Yeiser v. DG Retail, LLC*, No. 18-cv-0320-WJM-STV, 2021 WL 1439853, at *8 (D. Colo. Apr. 16, 2021) (denying a plaintiff's motion for summary judgment on a defamation claim, where the plaintiff presented no evidence suggesting that the defendant "did not have a reasonable belief" in the truth of his published statement—*viz.*, that the plaintiff "shoplifted"—and where the plaintiff failed to

---

[12] Plaintiffs allege that, on April 21, 2020, they mailed a "cease and desist letter" to Mr. Jackson, demanding that he cease publication of the "defamatory material." (Doc. No. 56 at ¶ 4.)  Plaintiffs allege that Mr. Jackson "never responded" to the letter, and instead, "continue[d] to publish false, defamatory and outrageous statements regarding the named Plaintiffs." (*Id.* at ¶ 5.)  However, Plaintiffs have produced no evidence to support these allegations, which Defendant has categorically denied.  (*See* Doc. No. 70 at ¶¶ 4-5.)

demonstrate "the material falsity" of that statement, given that his criminal conviction for that offense "undercut any suggestion to the contrary").

To the extent Plaintiffs are considered "private figures," they neither argue, nor point to evidence showing, that Mr. Jackson negligently failed to ascertain the truth of his statements before publishing them. *See Quigley*, 43 F. Supp.2d at 1180 ("One who publishes a false and defamatory concerning a private person is subject to liability, if, but only if, he (a) knows that the statement is false and that it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them.") (alterations omitted). Plaintiffs do not direct the court to sufficient evidence that Defendant knew, or strongly suspected, that his statements concerning Plaintiffs were false to allow this court to determine that judgment is proper as a matter of law. *C.f. Signer v. Pimkova*, No. 05-cv-02039-REB-MJW, 2007 WL 4442327, at *5 (D. Colo. Dec. 14, 2007) (holding evidence adequate to support a finding that the defendant acted negligently in publishing defamatory statements, where the defendant "admitted at his deposition that he did not actually believe" the statements that he made). Nor do Plaintiffs proffer other evidence suggesting that Mr. Jackson's actions departed from "the standard of care that a reasonably prudent person would have exercised in a similar situation." *See Slack v. Farmers Ins. Exchange*, 5 P.3d 280, 285 (Colo. 2000) (defining negligence as the failure to exercise such care).

On this record, then, Plaintiffs have failed to produce sufficient, credible evidence to establish that Defendant acted "with fault amounting to at least negligence." Thus, Plaintiffs have not met their initial summary judgment burden to establish all essential elements of their

defamation claim.[13]   For that reason, Plaintiffs' Motion for Summary Judgment as to their defamation claim is **DENIED**.

### B.  *The Remaining Claims*

Plaintiffs' second claim is for "Infliction of Emotional Distress," while their third claim is for "Extreme and Outrageous Conduct."  (Doc No. 56 at ¶¶ 48-66.)  However, it is clear from Plaintiffs' allegations, as well as their summary judgment briefing, that both claims assert the same cause of action, *viz.,* intentional infliction of emotional distress.  (*See* Doc. No. 113 at 12-13.)

In Colorado, the required elements of a claim for intentional infliction of emotional distress are: "(1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused the plaintiff to suffer severe emotional distress."  *English v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004) (citing *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994)); *see also Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999) (describing this tort as "intentional infliction of emotional distress by outrageous conduct").

---

[13] The court also observes that Plaintiffs have failed to put forth adequate evidence showing that Mr. Jackson "published" the purportedly defamatory statements at issue.  "Publication of a defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed."  *Card v. Blakeslee*, 937 P.2d 846, 850 (Colo. App. 1996).  Here, as to Mr. Jackson's purported statements that Rose Banks "engaged in fraud" and "received funds" totaling "5 million dollars," Plaintiffs claim that the statements were "posted" "in an email."  (Doc. No. 56 at ¶ 26.)  However, Plaintiffs do not allege, much less proffer credible evidence showing, the email's recipient, if any.  *See Harris v. Commerce City*, No. 09-cv-01728-MSK-KMT, 2010 WL 3307465, at *3 (D. Colo. Aug. 18, 2010) (dismissing a defamation claim as inadequately pleaded, where among other things, the plaintiff failed to adequately allege that the defendant "ever published any statement about [the plaintiff] to anyone").  Further, as to the statements that Mr. Jackson admitted publishing on Facebook, there is no evidence in the record as to whether those social media postings were, in fact, visible to third parties or to individuals without an expectation of privacy.

Here, Rose Banks and Lamont Banks argue that they have both "suffered emotional distress and trauma" due to Mr. Jackson's publication of the aforementioned statements. (Doc. No. 113 at 12.) In support of their claim, Rose Banks and Lamont Banks have each submitted their own declarations, as purported evidence of the "emotional toll" that Mr. Jackson's actions have taken on them. (*Id.*; *see* Doc. No. 112-2; Doc. No. 112-3.) However, Plaintiffs do not direct the court to sufficient evidence to demonstrate that Mr. Jackson acted recklessly, or with the intent to cause them emotional distress. *See Fisher v. Koopman*, No. 15-cv-0166-WJM-NYW, 2016 WL 8540859, at *10 (D. Colo. Aug. 1, 2016) (granting a defendant's motion for summary judgment on an intentional infliction of emotional distress claim under such circumstances). Absent sufficient evidence supporting a necessary element of their claim, Plaintiffs' Motion for Summary Judgment is **DENIED** as to their claim for intentional infliction of emotional distress.

### C. Injunctive Relief

Plaintiffs also request injunctive relief. (Doc. No. 113 at 13-14.) Specifically, Plaintiffs ask that Mr. Jackson be enjoined from further publication of "libelous and/or slanderous material." (*Id.* at 13.) As an initial matter, the court notes that injunctive relief is not a separate cause of action, but a claim for relief. *See Brickert v. Deutsche Bank Nat'l Tr. Co.*, 380 F. Supp. 3d 1127, 1141 (D. Colo. 2019). To the extent that Plaintiffs seek a preliminary injunction, they must demonstrate, *inter alia*, a substantial likelihood of success on the merits. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980). To obtain a permanent injunction, a party must show, *inter alia*, actual success on the merits. *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003). In this case, Plaintiffs have not succeeded on the merits of their claims. Nor have they proven a substantially likelihood of such success. Thus, there is no basis upon which to grant

Plaintiffs an injunction of any kind at this juncture.  Accordingly, Plaintiffs' request for injunctive relief is **DENIED**.

### III.  *Defendant's Motion for Summary Judgment*

Mr. Jackson has filed a competing Motion for Summary Judgment on Plaintiffs' claims, though without any accompanying exhibits or citation to the record.  (Doc. No. 114.)  As discussed *supra*, the court may grant a motion for summary judgment if the movant shows both that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  To support assertions of fact, the movant must cite "to particular parts of materials in the record," including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials.  Fed. R. Civ. P. 56(c)(1)(A).  Here, Defendant moves for summary judgment on the grounds that his factual assertions "remain undisputed by Plaintiffs," and because "no proof or evidence nor discovery has been given from the Plaintiff(s) [sic] side."  (Doc. No. 114 at 1.)  Defendant sets forth thirty-four supposedly "undisputed" facts, and then goes on to argue that Plaintiffs "have not met their burden of proof."  (*Id.* at 2-6.)  However, Defendant does not cite, or even allude, to materials in the record to support his arguments.  *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings."); *see also Mayfield v. Harvey Cnty. Sheriff's Dep't*, 732 F. App'x 685, 689 (10th Cir. 2018) (affirming the denial of summary judgment where the movant cited no evidence supporting their factual assertions).  Even though Mr. Jackson is a *pro se* litigant, he must still support his assertions with citations to the "parts of the record on which [he] relies."  *Baer v. Salt Lake City Corp.*, 705 F. App'x 727, 730 (10th Cir. 2017).

In addition, to the extent that Mr. Jackson contends that Plaintiffs' claims cannot survive due to the statute of limitations (Doc. No. 114 at 6), he bears the burden of proof on that affirmative defense. *See Cahill v. Am. Family Mut. Ins. Co*., 610 F.3d 1235, 1238 (10th Cir. 2010) (applying state burden of proof to issues underlying statute of limitations defense); *Crosby v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1279, 1283 (Colo. App. 2010) (observing that defendant bore the burden of proof to establish the affirmative defense of the statute of limitations). Mr. Jackson has not carried his burden here. Accordingly, Defendant's Motion for Summary Judgment is **DENIED**.

## IV. *Defendant's Motion for Disqualification*

Finally, Mr. Jackson has filed a motion demanding that Plaintiffs' attorney, Bernard Kleinman, "be immediately dismissed" from this case, due to a purported "conflict of interest." (Doc. No. 123 at 1.) Specifically, Defendant complains that, after this lawsuit was already underway, Mr. Kleinman filed his own defamation claim against Defendant in New York state court. (*Id.*; *see* Doc. No. 123-1.) Defendant laments that Mr. Kleinman did so, only after obtaining his "private and personal information" from the discovery phase of the present litigation. (Doc. No. 123 at 4.) Defendant argues that Mr. Kleinman's actions were "deceitful," and he contends that Mr. Kleinman essentially "used" this lawsuit for his own personal "gain." (*Id.* at 4, 8.) Mr. Jackson argues, for that reason, that Mr. Kleinman "should no longer be privy to any information" in this case, and he asks that the court order all "contact" between the "parties" to "cease." (*Id.* at 1.)

Defendant further argues that Mr. Kleinman's removal from this case is warranted, because he has engaged in various acts of "attorney misconduct." (*Id.* at 1-3, 7-8.) Defendant contends, in particular, that Plaintiffs' attorney has "willfully hid" the full transcript of Defendant's

deposition testimony. (*Id.* at 1, 7-8.) In addition, Defendant claims that, on numerous occasions throughout this litigation, Mr. Kleinman has knowingly and intentionally submitted "false information" to the court, including his clients' interrogatory responses and the declarations supporting their Motion for Summary Judgment. (*Id.* at 2-3, 6-7.) Defendant complains that Mr. Kleinman's litigation tactics amount to "nothing but vindictive harassment." (*Id.* at 5.)

A motion to disqualify an attorney lies within the sound discretion of the trial court. *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994) ("[T]he control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge, and is thus a matter of judicial discretion.") (internal quotation marks omitted); *accord Chavez v. New Mexico*, 397 F.3d 826, 839 (10th Cir. 2005). The court "has the power to disqualify counsel at its discretion for violations of professional standards of ethics[,]" but an ethical violation does not automatically "trigger disqualification." *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 664 (D. Kan. 1998) (citing *EEOC v. Orson H. Gygi Co.*, 749 F.2d 620, 621 (10th Cir. 1984)). As the moving party, Mr. Jackson bears the burden of establishing the grounds for disqualification. *Quark, Inc. v. Power Up Software Corp.*, 812 F. Supp. 178, 179 (D. Colo. 1992) (citing *FDIC v. Sierra Res., Inc.*, 682 F. Supp. 1167, 1170 (D. Colo. 1987)). "Specific facts must be alleged and counsel cannot be disqualified on the basis of speculation or conjecture." *Id.* (citing *Sierra Res.*, 682 F. Supp. at 1170) (internal quotation marks and alterations omitted).

Motions to disqualify opposing counsel are generally disfavored. *See, e.g.*, *Chung v. Lamb*, No. 14-cv-3244-WYD-KLM, 2016 WL 11548225, at *2 (D. Colo. May 17, 2016); *Miller v. Deutsche Bank Nat'l Trust Co.*, No. 12-cv-03278-PAB, 2013 WL 4776054, at *5 (D. Colo. Sept. 4, 2013); *Kirzhner v. Silverstein*, No. 09-cv-02858-CMA-BNB, 2010 WL 2998792, at *1 (D. Colo.

July 28, 2010). Indeed, "courts have historically been highly cynical of motions to disqualify opposing counsel, noting that such motions are often dilatory or tactical devices." *Fognani v. Young*, 115 P.3d 1268, 1272 (Colo. 2005) (collecting cases); *see Cope v. Auto-Owners Ins. Co.*, 437 F. Supp. 3d 890, 906 n.14 (D. Colo. 2020) (stating that "disqualification of a party's chosen attorney is an extreme remedy" that "should not be granted without ruling out reasonable remedies short of disqualification") (internal quotation marks omitted). To guard against such nefarious stratagems, the court "must make specific findings and conclusions when ruling on a motion for disqualification of counsel." *FDIC v. Isham*, 782 F. Supp. 524, 527 (D. Colo. 1992) (citations omitted); *accord World Youth Day, Inc. v. Famous Artists Merchandising Exchange, Inc.*, 866 F. Supp. 1297, 1299 (D. Colo. 1994). Where, as here, the record is sufficient for making that determination, no evidentiary hearing is required. *Weeks v. Indep. Sch. Dist. No. I-89*, 230 F.3d 1201, 1212 (10th Cir. 2000).

"[A] motion to disqualify counsel in a federal case is a substantive motion that affects the rights of the parties, and as such, it must be decided by applying federal law." *Helmer v. Goodyear Tire & Rubber Co.*, No. 12-cv-00685-RBJ, 2013 WL 328951, at *3 (D. Colo. Jan. 29, 2013) (citing *Cole*, 43 F.3d at 1383). That is, attorneys in federal cases are not only "bound by the local rules of the court in which they appear," but also by "the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights." *Cole*, 43 F.3d at 1383 (explaining that motions to disqualify in federal court affect substantive rights of the parties and are "decided by standards developed under federal law"). This District has adopted the

Colorado Rules of Professional Conduct as its standards of attorney responsibility.[14]  *Cope*, 437 F. Supp. 3d at 894 (citing D.C.COLO.LAttyR 2(a)).

Here, Defendant moves to disqualify Plaintiff's attorney, Mr. Kleinman, on two main grounds.  Defendant argues, first, that Mr. Kleinman's pending lawsuit against him in New York state court constitutes a concurrent conflict of interest that warrants Mr. Kleinman's immediate removal from this case.  (Doc. No. 123 at 1, 4.)  Mr. Jackson suggests that these circumstances implicate Colorado Rule of Professional Conduct 1.7(a).  (*Id.* at 4.)  The court, however, disagrees.

"A conflict of interest is traditionally a matter of concern where an attorney's interest conflicts with that of [his] own client—not that of the opposing party."  *Miller*, 2013 WL 4776054, at *5 (citations omitted).  "As a general rule, courts do not disqualify an attorney on the grounds of a conflict of interest unless the [] client moves for disqualification."  *Gates Rubber Co. v. Bando Chem. Indus.*, 855 F. Supp. 330, 334 (D. Colo. 1994); *accord Shapiro v. Rynek*, No. 13-cv-3086-WJM-KMT, 2017 WL 121617, at *3 (D. Colo. Jan. 11, 2017) ("[C]ourts should generally refuse to entertain a motion to disqualify based on a conflict of interest where the motion is brought by an opposing party."); *Anzora v. Lezama*, No. 1:17-cv-01983-DDD-NRN, 2019 WL 3334685, at *9 (D. Colo. July 24, 2019) ("Generally, courts do not consider claimed violations of ethics rules raised by nonclients."); *see also Mills v. Hausman-McNally, S.C.*, 992 F. Supp. 2d 885, 891 (S.D.

---

[14] Mr. Jackson's Motion for Disqualification focuses on the New York Rules of Professional Conduct.  (Doc. No. 123 at 2.)  While inapplicable to the present litigation, the New York Rules of Professional Conduct upon which Defendant relies are, in all relevant respects, identical to the Colorado Rules of Professional Conduct.  Indeed, both sets of rules are patterned after the ABA's Model Rules of Professional Conduct.  *Funplex P'ship v. FDIC*, 19 F. Supp. 2d 1201, 1206 (D. Colo. 1998); *Ipsos-Insight, LLC v. Gessel*, 547 F. Supp. 3d 367, 373 n.1 (S.D.N.Y. 2021).  Therefore, the court examines Defendant's arguments as to violations of the New York Rules of Professional Conduct under the equivalent Colorado Rules of Professional Conduct.

Ind. 2014) ("The general rule accepted by most federal jurisdictions is that only a current or former client has standing to seek disqualification of an attorney from a matter pending before a court."). Nevertheless, a motion to disqualify opposing counsel may be granted where "the interests of the public are so greatly implicated that an apparent conflict of interest may tend to undermine the validity of the proceedings." *Kirzhner*, 2010 WL 2998792, at *4 (quoting *Abbot v. Kidder Peabody & Co.*, 42 F. Supp. 2d 1046, 1050 (D. Colo. 1999)); *accord Shapiro*, 2017 WL 121617, at *3 ("[T]he opposing party may have standing if it raises a conflict that, if left unaddressed, would clearly call into question the fair or efficient administration of justice.").

Colorado Rule of Professional Conduct 1.7(a), which addresses concurrent conflicts of interest, provides, in relevant part, that a lawyer shall not represent a client if: "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Mr. Jackson argues that Plaintiffs' attorney violated this Rule by obtaining Mr. Jackson's confidential information during the course of this lawsuit, and then using that information "for his own gain" in his own lawsuit against Mr. Jackson. (Doc. No. 123 at 4.) However, as Mr. Jackson concedes, Mr. Kleinman "doesn't represent" him. (*Id.*). Nor does Defendant allege himself to be a former client of Plaintiffs' attorney. *See Shapiro*, 2017 WL 121617, at *3-4 (holding that a litigant lacked standing to assert a violation of Colorado Rule of Professional Conduct 1.7(a) by opposing counsel under such circumstances); *see also O'Hanlon v. AccessU2 Mobile Solutions, LLC*, No. 18-cv-00185-RBJ-NYW, 2018 WL 3586395, at *4 (D. Colo. July 26, 2018) ("As an opposing party, who does not allege to be a former or current client, Mr. O'Hanlon has a difficult

task of establishing that he suffered any cognizable injury from Mr. Mann's representation of Defendants."). Further, Mr. Jackson offers no facts suggesting that Mr. Kleinman's interests are presently at odds with those of his clients. To the contrary, the interests of Plaintiffs and their attorney appear unequivocally aligned, in that both seek judgments in their favor as to their respective claims against Defendant. *See Wisehart v. Wisehart*, No. 18-cv-00021-MSK-NYW, 2018 WL 11182736, at *3 n.5 (D. Colo. Oct. 16, 2018) (finding no conflict of interest arising from defense counsel's representation of his clients in "several related actions" that were pending, given that all of those actions concerned "a similar nucleus of operative facts" that pitted the plaintiff and the defendants "against each other in some fashion").

Moreover, Defendant fails to demonstrate that Mr. Kleinman's alleged conflict, if left unaddressed by the court, "would seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Shapiro*, 2017 WL 121617, at *3 (quoting *United States v. Trujillo-Terrazas*, 405 F.3d 814, 818 (10th Cir. 2005)); *see Isham*, 782 F. Supp. at 528 ("Disqualification should not be imposed unless the claimed misconduct in some way 'taints' the trial or legal system."). Defendant complains that, while acting as Plaintiffs' lawyer in this case, Mr. Kleinman "made himself privy to" Defendant's "private and personal information," which Mr. Kleinman then used for his own personal gain. (Doc. No. 123 at 4.) However, Defendant provides no factual corroboration for these assertions, instead merely speculating that "there most certainly is a risk" that Mr. Kleinman has engaged in such unethical conduct. (*Id.*) As discussed *supra*, a motion seeking the disqualification of opposing counsel must be supported by more than speculation or conjecture. *See Sierra Res.*, 682 F. Supp. at 1170 ("We emphasize that counsel cannot be disqualified on the basis of speculation or conjecture, and the Court may rule on disqualification

only after the moving party has alleged facts which demonstrate a potential violation of the disciplinary rules.").  The court also notes that Mr. Kleinman's complaint against Mr. Jackson, a copy of which is attached as an exhibit to the Motion for Disqualification, does not contain or allude to any confidential information derived from this lawsuit.[15]  (Doc. No. 123-1.)  Accordingly, Defendant has failed to persuade the court that Mr. Kleinman should be removed from this case due to his alleged conflict of interest.[16]

As to his second main point of contention, Defendant argues that Plaintiffs' attorney has "willingly submitted false information" to the court during this case, in violation of numerous rules of professional conduct.  (Doc. No. 123 at 1-3, 6-8.)  For instance, Defendant claims that Plaintiffs' interrogatory responses are replete with "lies," notwithstanding Mr. Kleinman's obligation to ensure that his clients' statements are "true and valid."  (*Id.* at 7.)  Defendant likewise alleges that Plaintiffs' declarations in support of their Motion for Summary Judgment are "full of false statements" that Mr. Kleinman "knew" were false at the time of their submission.  (*Id.*)  In addition, Mr. Jackson claims that Plaintiffs' attorney "intentionally did not supply" him with a copy of his deposition testimony, and instead, "pulled parts from the deposition" to use against him in the New

---

[15] Mr. Kleinman's complaint does cite to portions of Mr. Jackson's deposition testimony from this case.  (Doc. No. 123-1 at 13 ¶ 14.)  However, it is clear that these materials have not been designated as confidential by the parties here.  (Doc. No. 125 at 2 ¶ 11 (citing Doc. No. 106 at ¶ 8).)

[16] Defendant also suggests that Mr. Kleinman's actions implicate Colorado Rule of Professional Conduct 1.8(e), which generally prohibits an attorney from providing "financial assistance to a client in connection with pending or contemplated litigation."  (Doc. No. 123 at 5); *see* Colo. R. Prof. Conduct 1.8(e).  Mr. Jackson argues that Mr. Kleinman violated this Rule by "mix[ing] information" from this lawsuit with the New York lawsuit.  (Doc. No. 123 at 5.)  However, Mr. Jackson does not make any factual allegations suggesting that Mr. Kleinman provided financial assistance to a client.  As such, Defendant has failed to show a basis for disqualifying Mr. Kleinman under Colorado Rule of Professional Conduct 1.8(e).

York lawsuit. (*Id.* at 8.)  However, Defendant again provides no support for his allegations regarding Mr. Kleinman's purported misconduct, instead relying on his own speculative belief as to their truth.[17]  *Wisehart*, 2018 WL 11182736, at *3-4 (denying a motion to disqualify opposing counsel, where the movant alleged, among other things, that the attorney aided and abetted his client's criminal conduct during the course of the litigation and concealed material information from the court, but offered no evidentiary or factual support for those assertions); *see also Hutchinson v. Pfeil*, 105 F.3d 562, 565 (10th Cir. 1997) ("We find no merit to the Plaintiff's argument, which is based solely upon instances in which the Defendants' counsel took positions contrary to those taken by the Plaintiff's counsel.  Defendants' counsel did no more than what they are entitled and required to do—zealously represent their clients by advancing arguments and factual interpretations favorable to their clients.").  Accordingly, Defendant fails to demonstrate that Mr. Kleinman's disqualification is warranted on this ground, either.

On this record, then, Defendant has failed to meet his burden to establish the grounds for Mr. Kleinman's disqualification from this case.  Therefore, Defendant's Motion for Disqualification is **DENIED**.[18]

---

[17] Moreover, Plaintiffs have produced evidence showing that Mr. Kleinman did, in fact, provide Defendant with a copy of the deposition testimony at issue.  (Doc. No. 125 at 2 ¶ 12; *see* Doc. No. 125-1 at ¶¶ 4-5.)

[18] In their Response brief, Plaintiffs ask that sanctions be imposed against Defendant for "knowingly violating" the terms of a Protective Order governing this case.  (Doc. No. 125 at ¶¶ 17-20; *see* Doc. No. 106.)  Plaintiffs also request an award of their attorneys' fees and costs incurred in responding to Defendant's Motion for Disqualification, on the grounds that the Motion was "frivolous."  (Doc. No. 125 at ¶¶ 20-21.)  However, Plaintiffs' requests were not made in a separate document, as required by this District's Local Rules.  *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion.  A motion shall be filed in a separate document.").  Further, Plaintiffs' arguments concerning sanctions are brief and

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED THAT**:

(1) Plaintiffs' "Motion for Summary Judgment F.R.Civ.P. [sic] Rule 56(a)" (Doc. No. 112) is **DENIED**;

(2) Defendant's "Motion for Summary Judgment" (Doc. No. 114) is **DENIED**;

(3) Defendant's "Motion [] Asking for Dismissal of Plaintiffs [sic] Counsel" (Doc. No. 123) is **DENIED**;

(4) A Final Pretrial Conference is **SET** for **July 27, 2022 at 10:00 a.m. MST** before Magistrate Judge Nina Y. Wang, **to be held via videoconference**. **The Parties shall participate using the attached videoconferencing instructions**. In addition, the Parties shall jointly submit a proposed Final Pretrial Order no later than **July 20, 2022**, by filing a copy on the docket and by emailing a Word version to Wang_Chambers@cod.uscourts.gov; and

(5) A copy of this Order shall be sent to:

Terrelle Jackson
2131 North Collins
Suite 433 - PMB 174
Arlington, TX 76011

DATED:  May 9, 2022                          BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

conclusory.  Given these circumstances, and taking into account that Defendant is a *pro se* litigant, the court does not find sanctions to be warranted.